IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEVI SPRINGER,<br>    Plaintiff, | )<br>)<br>) | Civil Action No. 7:13cv00549 |
| v. | )<br>) | **REPORT AND RECOMMENDATION** |
| RANDALL MATHENA, *et al.*,<br>    Defendants. | )<br>) | By: PAMELA MEADE SARGENT<br>UNITED STATES MAGISTRATE JUDGE |

Levi Springer, a Virginia inmate proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983, against various employees of the Virginia Department of Corrections, ("VDOC"), and Red Onion State Prison, ("ROSP"). His Complaint alleges that the defendants have violated his rights under the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution by refusing to provide prescribed medication for a skin ailment, refusing to allow him to be transferred to "residential" mental health treatment and by interfering with or preventing the delivery of his outgoing mail. Because at least three of Springer's previous complaints have been dismissed with prejudice for failing to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1), Springer may not proceed with this action unless he pays the filing fee or shows that he is under "imminent danger of serious physical injury." 28 U.S.C.A. § 1915(g) (West 2006). This matter is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing to determine if Springer is under imminent danger of serious physical injury. This hearing was conducted on December 18, 2013, with Springer participating by videoconferencing. Springer requested, and was granted, a 14-day period during which he could file

-1-

documentary evidence with the court. That evidence now has been received and reviewed. Based on the evidence presented, the undersigned now submits the following report recommending that the court find that Springer is not under imminent danger of serious physical injury.

*I. Analysis*

Springer testified that he has suffered from a skin ailment since July 2012. Since then, Springer testified that his skin reddens and peels off of his "privates," including his testicles, and his shins. He said that he also experiences red bumps on his thighs. Springer stated that he has been seen by a physician at ROSP for this condition on at least five separate occasions. Springer stated that the physician has told him that the condition is caused by a ringworm or fungal infection.

Springer testified that the treatment provided by the physician for his condition was ineffective until March 2013 when the physician prescribed an ointment for him to use. This ointment contained clotrimazole, betamethasone and dipropionate. Springer testified that, once he began using this ointment, his skin condition cleared. Springer stated that he received only one tube of this ointment. When he requested more of the ointment from the ROSP medical department, he was given another ointment, which contained only clotrimazole. This ointment was ineffective, and the skin condition returned.

Springer stated that he was seen by the ROSP physician again on August 12, 2013. On this occasion, Springer requested the physician order that he be provided with the ointment that was effective. Springer stated that the physician told him he

would prescribe the ointment for him. Springer said that he has not been provided with the ointment since August 12, 2013. Springer stated that the condition is painful and causes his skin to burn when the skin becomes "really red," but he admitted that he has not requested to see a physician since August 12, 2013.

Springer also testified that he has a long history of mental illness, including suffering from drug-induced psychosis. Nonetheless, Springer testified that his mental health conditions are stabilized and well-controlled on his current medication regime, which includes lithium, Lexapro and trazadone. Springer stated that he is receiving and taking these medications as ordered by his treating psychiatrist. Springer stated that he sees the psychiatrist every three and a half months and sees a qualified mental health professional, ("QMHP"), once a month. Springer could not identify any mental health treatment that he needs that is not being provided to him at ROSP. Instead, Springer stated that he wants to be transferred to residential mental health treatment because he has been held there in the past.

With regard to his complaints regarding the failure to deliver his outgoing mail, Springer admitted that the failure to deliver the mail involved caused him no imminent danger of serious physical injury.

Subsequent to the hearing, Springer filed a number of exhibits, (Docket Item No. 10). These exhibits include an affidavit by Springer. (Docket Item No. 10). In this affidavit, Springer states that he began receiving "infected laundry" from the ROSP laundry room and that this "initially caused red bumps and peeling to red skin on the back of the elbows." In the affidavit, Springer also states that the

ROSP physician prescribed dandruff shampoo for him in September 2012 because Springer was experiencing irritation on his scalp and neck at that time. Springer also states that in September/October 2012 he noticed the "infection" would increase after he received "allegedly clean laundry…." He states that in November 2012 he had peeling of the skin and sores "all over the back of arms, on legs, and testicles." These exhibits also include an Informal Complaint, Regular Grievance and Emergency Grievance Springer filed complaining of the above. (Docket Item No. 10-1.)

These exhibits also include an affidavit from Springer in which he states that defendant Saylor had refused to conduct an interview or evaluation of Springer's mental health records regarding his potential placement in residential mental health treatment. (Docket Item No. 10-2.) Springer states that, although he qualifies for residential treatment under ROSP Operating Procedure 830.2, Salyor and defendant Moceri refuse to comply with the policy and recommend his placement. Springer states that he has been held in segregation at ROSP from January 22, 2009, to the date of the affidavit. This affidavit states that Springer has suffered from "increased depression, anti social communication, hallucinations, and fear of taking current antipsychotic medication." Springer states that, when he tried to notify the mental health director in Richmond that ROSP refused to follow mental health policies, his mail was opened by defendants Pease and Stanley and diverted to a mental health clinical supervisor in Roanoke who has no authority to enforce mental health policy. Springer claims that the refusal to allow inmates to have unrestricted access to "the media, the Department of Justice, the [American Civil Liberties Union], nonprofit private organizations, and internet website services or

private attorneys" allows the Department of Corrections to continue to violate the prisoner's rights without any accountability or consequences.

These exhibits also include Springer's letter to the medical director, the letter response of the clinical supervisor, Inmate Requests for Information/Service, Informal Complaints and Regular Grievances Springer filed complaining of the above. (Docket Item No. 10-3.) In his letter to the medical director, Springer states that he is "stabilized on mental health medications…." In an Inmate Request for Information/Service, Spring wrote that "I have an extended period of stability of serious charge free behavior…."

The exhibits also include an affidavit from Springer stating that defendants Phipps and Cox initially denied him the ointment prescribed to treat his infections. (Docket Item No. 10-4.) This affidavit states that this medication was effective in controlling the infection. This affidavit also states that when he ran out of this medication, the defendants provided a different ointment that is not effective in treating the infection. These exhibits also include Inmate Requests for Information/Service, an Informal Complaint, a Regular Grievance and Emergency Grievances Springer filed complaining of the above. (Docket Item No. 10-5.)

To prove that he is under imminent danger of serious physical injury, an inmate must show that the

> "conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Vague, speculative, or conclusory allegations are insufficient to invoke the exception of

§1915(g); rather the inmate must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Id.*

*Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006). Accordingly, based on the above, I find that Springer is not under imminent danger of serious physical injury. *See Gorbey v. ATF*, 2012 WL 1987163, at *3 (N.D. W.Va. June 1, 2012) (plaintiff's failure to attempt to obtain medical treatment for allergic skin condition evidence of no imminent danger of serious medical injury).

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The failure to provide Springer with the proper medication to treat his skin ailment has not created an imminent danger of serious physical injury to Springer;
2. The failure to transfer Springer to residential mental health treatment has not created an imminent danger of serious physical injury to Springer; and
3. The failure to deliver Springer's outgoing mail has not created an imminent danger of serious physical injury to Springer.

## RECOMMENDED DISPOSITION

For the reasons stated above, I recommend that the court find that the

plaintiff is not under imminent danger of serious physical injury.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 13th day of January, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE